# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### Assigned on Briefs May 23, 2001

## STATE OF TENNESSEE v. GEORGE E. RATLIFF

**Consolidated Direct Appeal from the Criminal Court for Washington County**
**No. 23301      Lynn W. Brown, Judge**

---

**No. E1999-01214-CCA-R3-CD**
**August 27, 2001**

---

The defendant, George E. Ratliff, was convicted by a jury of rape of a child. In this consolidated appeal, Defendant alleges various errors by the trial court, challenges his sentence, and appeals the dismissal of his petition for writ of error coram nobis on the ground of untimely filing. After a review of the record and applicable law, we reverse the trial court's summary dismissal of the petition for writ of error coram nobis based on the recent decision of our supreme court in Workman v. State, 41 S.W.3d 100 (Tenn. 2001). We remand this matter to the trial court for a hearing on the merits of the petition for writ of error coram nobis. Pursuant to State v. Mixon, 983 S.W.2d 661 (Tenn. 1999), appellate proceedings on Defendant's appeal as of right from his conviction are stayed, pending the trial court's ruling on the error coram nobis petition.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Reversed in Part: Order Dismissing Petition for Writ of Error Coram Nobis is Reversed and the Petition is Remanded for an Evidentiary Hearing; Further Appellate Proceedings are Stayed.**

THOMAS T. WOODALL, J., delivered the opinion of the court, in which GARY R. WADE, P.J., and ROBERT W. WEDEMEYER, J., joined.

Steve McEwen, Mountain City, Tennessee (on appeal); and David F. Bautista, District Public Defender; Jeffrey C. Kelly, Assistant Public Defender; and Deborah Huskins, Assistant Public Defender, Johnson City, Tennessee (at trial), for the appellant, George E. Ratliff.

Paul G. Summers, Attorney General and Reporter; Angele M. Gregory, Assistant Attorney General; Joe C. Crumley, Jr., District Attorney General; Steve Finney, Assistant District Attorney General; Lisa Rice, Assistant District Attorney General; Victor Vaughn, Assistant District Attorney General; and Janet Hardin, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

Defendant was sentenced as a Range I offender to serve twenty-four years in the Tennessee Department of Correction for his conviction. On December 7, 1998, the trial court conducted a hearing on Defendant's motion for a new trial. At the conclusion of the hearing, the trial court denied Defendant's motion for new trial and entered an order to that effect the same day.

Defendant filed a timely notice of appeal challenging his conviction and sentence on December 15, 1998. Slightly more than a year later, on December 21, 1999, Defendant filed a petition for writ of error coram nobis based on the fact that the victim had recently recanted her testimony. The trial court summarily dismissed the petition because it was filed fourteen days past the expiration of the applicable one-year statute of limitations. Pursuant to an order from this Court dated September 8, 2000, Defendant's appeal from the dismissal of his petition for writ of error coram nobis and his pending appeal as of right from his conviction were consolidated to form the instant appeal to this Court.

**I. FACTUAL BACKGROUND**

Defendant was indicted and later convicted for sexually penetrating his six-year-old daughter, S.B., during the summer of 1996. (The victim shall be referred to herein by her initials.) Defendant and the victim's mother, Rebecca Jones, were in the process of dissolving their seven-year marriage at that time, and the custody of S.B. was a hotly contested issue between them. S.B. spent every other weekend with Defendant, who resided alone in a small building on his parents' property. His parents, sister, and her two children lived nearby in the main house. During S.B.'s weekends with Defendant, she slept in the house with the other children except for two episodes where S.B. had head lice. Because the risk of infecting her cousins was too great, on these two occasions she slept in the small building with Defendant, who claimed that he gave S.B. his bed and slept alone on the recliner chair.

For the most part, S.B. appeared to enjoy visiting Defendant and playing with her cousins. One weekend in September, however, S.B. told her mother, Jones, that she did not want to see Defendant. S.B. testified at trial that this was because she had just learned about "good touches" and "bad touches" from her guidance counselor at school. The counselor told the children that if they should ever experience a bad touch, they were to tell their parents. Consequently, S.B. informed Jones that Defendant had recently touched her between her legs and put his hand "inside of her private" but she did not know that this was wrong until she learned so at school. S.B. also testified concerning the way the elastic on her panties would snap back and hit her when Defendant removed his hand. S.B. claimed that Defendant threatened to kill her mother and grandmother if she ever told anyone about what he had done to her.

After hearing S.B.'s story on September 14, 1996, Jones reported the incident to the police. Shortly thereafter, Gary Lee Wiseman, an officer with the Washington County Sheriff's Department, came to the house to speak with S.B. Wiseman testified at trial that he did not attempt to acquire

an explicit statement from S.B. during his initial meeting with her, but called the Department of Children's Services ("DCS") for assistance because they are more adept at dealing with children. Rita Parris, a DCS caseworker, interviewed S.B. on September 26, 1996, and testified at trial that S.B. had informed her that Defendant touched her "inside her privates" nine times in one evening during the previous summer but he did not hurt her.

Parris referred S.B. to Dr. Martin Olsen, a licensed obstetrician and gynecologist, who testified that he examined S.B. on October 31, 1996. When Dr. Olsen asked S.B. why she came to see him, she responded, "Daddy touched me where he wasn't supposed to." According to Dr. Olsen's findings, the rectum showed no signs of trauma, but a colposcopic evaluation of the hymen revealed an injury which the doctor described as a "cleft at 6 o'clock." The doctor testified that this type of injury is consistent with sexual abuse because something must travel past both the labia majora and the labia minora and then penetrate the vagina to physically contact the hymenal ring-- jumping up and down, riding horseback, and falling off a bike will not accomplish this. Further, because hymenal injuries usually cause the victim some pain, they are seldom self-inflicted. However, Cherie Ratliff Morris, Defendant's sister, who helped take care of S.B. when she visited, testified that she witnessed something peculiar while S.B. was bathing with her cousins. Specifically, S.B. had shoved the leg of a Barbie doll into her "pee-pee." Morris was unable to estimate how much of the leg was inside of S.B., but she claimed that none of the doll's foot was visible. Morris did not take S.B. to see a doctor, but cautioned her not to put dolls inside of her anymore and then told Jones what had happened.

Officer Wiseman received Dr. Olsen's medical report on November 6, 1996. On December 12, 1996, he filed charges against Defendant based on the victim's statement and medical report. When questioned at trial as to why three months transpired from the date Wiseman received the initial report of S.B.'s abuse to the date he filed charges against Defendant, Wiseman explained that it is not uncommon for some time to pass between the first report of sexual abuse and arrest of a suspect. Various factors can influence the time frame for filing an indictment, including immediate danger to the victim and the Sheriff's Department's current case load. Wiseman testified that, in this particular case, he had been working on a double homicide, which takes precedence over non-urgent matters. Moreover, in cases of sexual abuse, medical reports must be completely evaluated. He explained that it is often advantageous, to both the accused and the police department, to wait before bringing charges and observe whether the victim's story remains consistent throughout the interview process and counseling sessions. In sum, Wiseman stated that he is seldom in a hurry to arrest a suspect unless the victim is in danger.

At his trial, Defendant testified that he had a good relationship with S.B. However, he also claimed that her statements concerning what he did to her were untruthful. Defendant maintained that S.B.'s allegations of sexual abuse were part of a conspiracy against him, contrived by Jones and her mother, to prevent him from obtaining custody of S.B. Defendant also claimed that after he filed for temporary custody in July 1996, Jones warned him that she would do whatever was necessary to keep Defendant from taking her child.

## II. ANALYSIS

Defendant contends that the trial court's dismissal of his petition for writ of error coram nobis on the ground of untimely filing violated his constitutional rights to due process. The State responds that state law clearly requires that a petition for writ of error coram nobis not filed within the one-year statute of limitations be dismissed as untimely.

First, we note that a petition for writ of error coram nobis ordinarily will be filed while an appeal is pending, because filing must occur within one year of the date a judgment becomes final in the trial court to be considered "timely." See Tenn. Code Ann. § 27-7-103 (1997); State v. Mixon, 983 S.W.2d 661, 671 (Tenn. 1999). Therefore, when a defendant files his petition for writ of error coram nobis in the trial court during the pendency of an appeal, he should contemporaneously file a motion requesting that the appellate proceedings be stayed pending the trial court's decision on that writ. See id. at 672. Here, Defendant did not file a motion to stay the appellate proceeding. However, in light of our ruling and to promote judicial economy, we grant Defendant a stay of appellate proceedings with regard to the direct appeal of his conviction.

We further note that the supreme court has clarified several procedural issues which have arisen relating to the operation of the writ of error coram nobis in criminal proceedings. Mixon, 983 S.W.2d at 668-73. Among other things, the supreme court held that in cases where the trial court grants a defendant a new trial based on his or her petition for writ of error coram nobis, and the State appeals, the appellate court should first consider the issues relating to the coram nobis proceeding. Id. at 672. If the trial court's decision is affirmed, the issues raised in the defendant's appeal as of right become moot. By contrast, where the trial court denies the petition for writ of error coram nobis and the defendant appeals, the appellate court must first address the issues raised in the defendant's appeal as of right. Id. If the appellate court determines that a new trial is required as a result of one or more of those issues, it need not address the issues raised in the coram nobis appeal. The supreme court recognized that coram nobis is an extraordinary procedural remedy and that, because it "fills only a slight gap into which few cases fall," it is appropriate that an appellate court consider whether relief is available pursuant to the writ only after it has determined that none of the issues raised in a defendant's appeal as of right warrant a new trial. Id.

Here, the trial court did not deny Defendant's petition for writ of error coram nobis as a result of a decision based on the merits of his case, but summarily dismissed his petition based on untimely filing. The procedure outlined in Mixon provides that appellate proceedings on a defendant's appeal as of right should be stayed pending the trial court's decision on the defendant's petition for writ of error coram nobis and, thereafter, any appeal from the trial court's decision on the petition is to be consolidated with the defendant's pending appeal as of right. Id. (citing Tenn. R. App. P. 16(b)). Consequently, until the trial court renders a decision on Defendant's petition based on the merits of his claim, under Mixon, appellate proceedings should be stayed. For reasons which follow, we find that the procedural time bar would violate Defendant's right to constitutional due process and, therefore, the statute of limitations does not apply here. Thus, Defendant is entitled to a hearing on his petition for writ of error coram nobis so that the trial court may properly evaluate his claim.

Following a hearing on the merits, the State or Defendant may appeal the trial court's decision, and this Court will then proceed according to the guidelines in <u>Mixon</u> discussed <u>supra</u>.

The State points out that the precise question whether the dismissal of a coram nobis petition, based on failure to file within the applicable statute of limitations, violates a defendant's due process rights was previously considered by this Court in <u>Seymour Hayes, III v. State</u>, No. 03C01-9902-CR-00066, Hamilton County (Tenn. Crim. App., Knoxville, May 20, 1999) <u>perm. to app. denied</u> (Tenn. 1999). This Court upheld the constitutionality of the time bar. However, this opinion was filed before our supreme court decided <u>Workman v. State</u>, 41 S.W.3d 100 (Tenn. 2001), a case which requires us to reverse the trial court's dismissal of Defendant's petition for writ of error coram nobis and remand the issue to the trial court for a hearing on the merits.

In <u>Workman</u>, the Tennessee Supreme Court granted application to appeal a case in which the petitioner was denied a hearing on his petition for writ of error coram nobis because the statute of limitations for filing had passed. Workman sought his writ based on claims that new evidence, unavailable during his trial, would show that he was actually innocent of capital murder. The supreme court found that, in a variety of contexts, due process may require tolling of an applicable statute of limitations. <u>Id.</u> at 103. The <u>Workman</u> court relied, in part, on the due process considerations discussed in <u>Burford v. State</u>, 845 S.W.2d 204 (Tenn. 1992). <u>Id.</u> at 102. Specifically, the <u>Burford</u> court recognized that "before a state may terminate a claim for failure to comply with procedural requirements such as statutes of limitations, due process requires that potential litigants be provided an opportunity for the presentation of claims at a meaningful time and in a meaningful manner" and that, "under the circumstances of a particular case, application of the statute may not afford a reasonable opportunity to have the claimed issue heard and decided." <u>Id.</u> (quoting <u>Burford</u>, 845 S.W.2d at 208). In determining what sort of opportunity is "reasonable," the court concluded that "[i]dentification of the precise dictates of due process requires consideration of both the governmental interests involved and the private interests affected by the official action . . . ." <u>Id.</u> The private interest at stake in <u>Burford</u> was the accused's opportunity to attack his conviction and incarceration on the grounds that he was deprived of a constitutional right; the governmental interest represented by the statute of limitations was the prevention of stale and groundless claims. <u>Id.</u> After weighing the competing interests, the court in <u>Burford</u> determined that the accused's interest in mounting a constitutional attack upon his conviction and incarceration outweighed the State's interest in preventing the litigation of stale and groundless claims.

After the court in <u>Workman</u> weighed the governmental interests involved against the private interests affected by the official action, it decided that, if the procedural time bar was applied, Workman could have been put to death without receiving an opportunity to have the merits of his claim evaluated by a court of this state. <u>Id.</u> at 103. In other words, due process precludes application of the statute of limitations to bar consideration of a petition for writ of error coram nobis in cases where the defendant's interest in obtaining a hearing to present newly discovered evidence, which may establish actual innocence, far outweighs any governmental interest in preventing the litigation of stale claims. <u>Id.</u> The supreme court concluded that Workman was entitled to a hearing to evaluate the claims contained in his petition for writ of error coram nobis, notwithstanding the fact that he

filed his petition *thirteen months* after discovering the newly discovered evidence. <u>Id.</u> In considering the delay, the court remarked that the time within which Workman's petition was filed did not exceed the reasonable opportunity afforded by due process, especially in cases such as Workman's where the evidence in issue may show actual innocence of a capital offense. <u>Id.</u> at 103-104.

Contrary to <u>Workman</u>, Defendant's case does not involve a capital offense. Yet a sentence of twenty-four years, without eligibility for release, is a sufficiently significant period of time to warrant similar treatment for purposes of due process analysis. Relevant to Defendant's sentence, we note the judgment form indicates that Defendant was sentenced as a "Standard 30% Range I" offender. However, Tennessee Code Annotated section 40-35-501(i)(1) provides that "[t]here shall be no release eligibility for a person committing an offense, on or after July 1, 1995, that is enumerated in subsection (2)," which includes rape of a child, and that "[s]uch person shall serve one hundred percent (100%) of the sentence imposed by the court less sentence credits earned and retained." Tenn. Code Ann. § 40-35-501(i)(1), (2) (1997). In the event the trial court denies Defendant's coram nobis petition, the judgment should be amended to reflect the proper release eligibility status regarding his sentence.

Returning to the due process issue, we observe that Defendant, similarly to the defendant in <u>Workman</u>, has raised serious questions regarding whether he, in fact, sexually abused his daughter. The great weight of evidence against him came from the testimony of the victim, who has allegedly since recanted. The record reveals that toward the end of November 1999, the victim and her mother contacted the attorney general's office to discuss the fact that the victim gave false testimony at Defendant's trial. The one-year statute of limitations on the filing of Defendant's petition for writ of error coram nobis expired on December 7, 1999, and he filed his petition fourteen days later, on December 21, 1999. The small delay in filing may or may be not attributable to the fault of Defendant and/or his attorneys. This issue, <u>inter</u> <u>alia</u>, should be decided by the trial court during a hearing to fully evaluate the strength of Defendant's claim in accordance with the legal rules set out for error coram nobis proceedings and recanted testimony. <u>See</u> <u>Mixon</u>, 983 S.W.2d at 672-73 n.17 (the supreme court affirmed the holding of this Court enunciating the correct standard to be applied by trial courts in determining whether a new trial should be granted upon the basis of newly discovered recanted testimony).

In fairness to the trial court, we are mindful that, under prior law, a petition for a writ of error coram nobis which was not filed within one year of the date on which the judgment of conviction became final was summarily dismissed as untimely. <u>Id.</u> at 670; <u>Sands v. State</u>, 903 S.W.2d 297, 299 (Tenn. 1995); <u>see</u> <u>also</u> <u>Newsome v. State</u>, 995 S.W.2d 129, 133 (Tenn. Crim. App. 1998). However, in accordance with the supreme court's decision in <u>Workman</u>, we find that Defendant's interest in obtaining a hearing on his claim outweighs the governmental interest embodied in the statute of limitations. Based on this finding, and because an evaluation of his claim may also reveal newly discovered evidence which shows actual innocence of the offense, we conclude that due process precludes summary dismissal of this claim based upon a statutory time bar.

A new trial should be granted upon the basis of newly discovered recanted testimony only if (1) the trial court is reasonably well satisfied that the testimony given by the material witness was false and the new testimony is true; (2) the defendant was reasonably diligent in discovering the new evidence, or was surprised by the false testimony, or was unable to know of the falsity of the testimony until after the trial; and (3) the jury might have reached a different conclusion had the truth been told. <u>Mixon</u>, 983 S.W.2d at 673 n.17. At the upcoming hearing on his petition for writ of error coram nobis, Defendant will have the opportunity to establish the above criteria. If he makes this showing, and convinces the trial court that the witnesses who testify in support of his claim are credible, he will be entitled to a new trial.

## III. CONCLUSION

For the forgoing reasons, we find that due process requires tolling of the applicable statute of limitations under <u>Workman v. State</u>, 41 S.W.3d 100 (Tenn. 2001). Accordingly, we reverse the trial court's summary dismissal of Defendant's writ of error coram nobis on the grounds that it was untimely filed, and remand this issue to the trial court for a hearing on the merits of that petition. Pursuant to <u>State v. Mixon</u>, 983 S.W.2d 661 (Tenn. 1999), appellate proceedings on Defendant's appeal as of right from his conviction are stayed pending the trial court's decision on the coram nobis petition. As a result of the stay, Defendant's appeal as of right is removed from this Court's docket. The case will be redocketed, if necessary, following the trial court's disposition of the petition for writ of error coram nobis, pursuant to the procedures detailed in <u>Mixon</u>.

_____
THOMAS T. WOODALL, JUDGE