IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
April 13, 2004 Session

## RAYMON HAYMON v. STATE OF TENNESSEE

**Direct Appeal from the Circuit Court for Dyer County**
**No. C99-175A      Lee Moore, Judge**

_____

**No. W2003-02535-CCA-R3-CO  - Filed June 16, 2004**

_____

The petitioner, Raymon Haymon, was convicted by a jury in the Dyer County Circuit Court of first degree premeditated murder.  Upon conviction, the petitioner was sentenced to life imprisonment.  Subsequently, the petitioner filed a petition for writ of error coram nobis, alleging that one of the witnesses at his trial had recanted his testimony.  The trial court denied the petition, finding that the petitioner failed to produce newly discovered evidence.  The petitioner appeals.  Upon review of the record and the parties' briefs, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court is Affirmed.**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which DAVID G. HAYES and JAMES CURWOOD WITT, JR., JJ., joined.

Ralph I. Lawson, Dyersburg, Tennessee, for the appellant, Raymon Haymon.

Paul G. Summers, Attorney General and Reporter; J. Ross Dyer, Assistant Attorney General; and C. Phillip Bivens, District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**I.  Factual Background**

On direct appeal, this court summarized the facts adduced at the petitioner's trial as follows:

> On July 19, 1997, the [petitioner] offered Wiled McMillin five hundred dollars to help him kill Jody McPherson.  According to McMillin, the [petitioner] stated he wanted McPherson killed because "he didn't wanna go back to prison."  The [petitioner] and McPherson had previously been arrested for the aggravated robbery of Pete's Liquor Store.  McMillin refused the offer, and the [petitioner] stated he would get Terry Cork to help him.  McMillin also testified that, later on that evening, he saw the [petitioner],

Terry Cork, and Jody McPherson riding in a red car in the Middle City area.

Terry Cork testified that, on the evening of July 19th, he left work at 9:00 p.m. and went to his father's house. Around 10:00 or 10:30 p.m., Cork walked to Erline Warren's house to watch television. During the evening, the [petitioner] drove to Warren's house and, thereafter, he and Cork left in a red vehicle driven by the [petitioner]. The [petitioner] dropped Cork off at his aunt's house and subsequently returned with Jody McPherson in the car. The three men drove toward Middle City under the pretext of "hang[ing] out and talk[ing] to some women." Once en route, the [petitioner] stated that he needed Cork and McPherson to help him look for a discarded rifle in a field that would "take care of some business concerning the Pete's Liquor Store robbery." Upon arrival at a field in Middle City, the men lit newspaper torches and looked for the rifle. As they were searching, Cork observed the [petitioner] shoot McPherson several times. Cork claimed that he began to run, but the [petitioner] pulled a second gun on Cork and told him "that it was gonna be more than one person out there dead if [Cork] didn't listen to what [the petitioner] said." The [petitioner] then ordered Cork to also shoot McPherson. The [petitioner] instructed Cork to wipe the guns off and "throw the guns off the side of a little bridge that was out there, like a little creek."

McPherson's body was discovered the next morning with one visible wound to the chest and two other wounds to the head and back. A cell phone was found at the scene, which was linked to Cork. Cork and the [petitioner] were questioned by the police, and both men denied any involvement in the murder. When the [petitioner] was interviewed on July 20, 1997, he stated that he knew McPherson had been shot three times, "one from the head, one from the chest, and one from the back." At this point, no details of the murder had been disclosed to the public. After being taken into custody on a bank robbery charge in 1999, Cork confessed to his involvement in McPherson's death and helped the police recover one of the discarded weapons used in the murder.

On June 14, 1999, a Dyer County grand jury indicted the [petitioner] for the premeditated first degree murder of Jody McPherson. On March 9, 2001, after a trial by jury, the [petitioner] was convicted as charged and was sentenced to life imprisonment.

State v. Raymon Haymon, No. W2001-02797-CCA-R3-CD, 2003 WL 22080780, at **1-2 (Tenn. Crim. App. at Jackson, Sept. 5, 2003).

On May 21, 2003, the petitioner filed a petition for writ of error coram nobis. In his petition, the petitioner claimed that he "received a letter and an affidavit from Wiled McMillian stating that he (McMillian) had lied on the [petitioner] during his . . . tr[ia]l and that he wanted to recant his testimony."

As an exhibit, the petitioner attached a copy of McMillian's statement. The verbatim contents of the statement are as follows:

> I Wiled McMillian was coerced into telling alot of lies at Raymond Haymond trial. After i got out of jail I went to his lawyer and told him the truth. But when i got another charge i had to tell them what i told the lawyer was a lie. Since i was faceing prison time again. They told me that i should stick to what i said at first and they would see again what they could do about getting me a reduces sentence. They put me in a hell of a position. I got myself out of troble i cut a prison sentence of 8/12 years down to a 5 year sentence at 30%. They said that nothing was going to be put in black and white i just had to trust them, and it would be in my best interest.

McMillian's letter was signed and dated May 20, 2002.

On September 12, 2003, a hearing on the petition was scheduled. Following arguments by the petitioner and the State, the petitioner acknowledged that the only newly discovered evidence he had to offer at the hearing was the "voluntary, notarized statement from the witness 13 months after the trial" and the testimony of McMillian. The petitioner also acknowledged that the issue was essentially the credibility of the witnesses. The State argued that the evidence was not newly discovered. In fact, the State noted that McMillian was extensively cross-examined by the petitioner at trial regarding a statement he made prior to trial alleging that he was coerced into lying to police about the petitioner's involvement in the crime. At trial, McMillian asserted that his trial testimony and statement to police were accurate, and his claim of coercion was false.

After listening to arguments, the trial court stated:

> I don't blame Mr. Haymon at all for filing the petition either. I mean, that's his right to do so. But as far as the Court is concerned there's got to be newly discovered evidence that – I mean . . . upon a Petition for Writ of Error Coram Nobis now there is a very limited scope for that hearing and it involves something that had to be newly discovered evidence.

So far everything that you have told me and that [the State] had told me was pursued and pursued aggressively by [the petitioner] during the trial.

. . . .

. . . What I'm finding is that those issues are not – that's not newly discovered evidence. Those issues all deal with the credibility of that witness and that was delved into deeply and aggressively by [the petitioner] at that time and it's not the basis for the issuance of a Writ of Coram Nobis.

Thereafter, the trial court denied the petition for writ of error coram nobis. The petitioner appeals, contending that the trial court erred in dismissing his petition without allowing the testimony of the petitioner and additional witnesses.

## II. Analysis

Tennessee Code Annotated section 40-26-105 (2003) provides:

There is hereby made available to convicted defendants in criminal cases a proceeding in the nature of a writ of error coram nobis, to be governed by the same rules and procedure applicable to the writ of error coram nobis in civil cases, except insofar as inconsistent herewith. . . . Upon a showing by the defendant that the defendant was without fault in failing to present certain evidence at the proper time, a writ of error coram nobis will lie for subsequently or newly discovered evidence relating to matters which were litigated at the trial if the judge determines that such evidence may have resulted in a different judgment, had it been presented at the trial.

Generally, a decision whether to grant a writ of error coram nobis rests within the sound discretion of the trial court. See State v. Hart, 911 S.W.2d 371, 375 (Tenn. Crim. App. 1995).

Under certain circumstances, recanted testimony may be considered newly discovered evidence. See State v. Mixon, 983 S.W.2d 661, 672 (Tenn. 1999). This court has concluded that a trial court should only grant a writ of error coram nobis upon the basis of newly discovered recanted testimony if:

(1) the trial court is reasonably well satisfied that the testimony given by the material witness was false and the new testimony is true; (2) the defendant was reasonably diligent in discovering the new evidence, or was surprised by the false testimony, or was unable to

-4-

know of the falsity of the testimony until after trial; and (3) the jury might have reached a different conclusion had the truth been told.

State v. Ratliff, 71 S.W.3d 291, 298 (Tenn. Crim. App. 2001) (citing Mixon, 983 S.W.2d at 673 n. 17).

Additionally, we observe that any affidavit supporting a petitioner's claim "must be relevant, material and germane to the grounds raised in the petition; and the affiant must have personal knowledge of the statements contained in the affidavit." Hart, 911 S.W.2d at 375. Should an affidavit fail to meet these criteria, no evidentiary hearing should be granted since the information, even taken as true, would not warrant relief. Id. Furthermore, cumulative evidence will also not justify the grant of a writ of error coram nobis. Id.

In the instant case, the trial court observed that the purported "newly discovered evidence" was in fact a rehashing of evidence that was thoroughly litigated at the petitioner's trial. Prior to the petitioner's trial, McMillian had recanted his statement to police, only to assert at trial that his inculpation of the petitioner was the truth. It is well-established that the writ of error coram nobis "is an *extraordinary* procedural remedy . . . [that] fills only a slight gap into which few cases fall." Mixon, 983 S.W.2d at 672. We agree with the trial court that this does not constitute newly discovered evidence which may be addressed in a writ of error coram nobis. Therefore, the trial court did not abuse its discretion in denying the petition.

### III.  Conclusion

Accordingly, we affirm the judgment of the trial court.

_____
NORMA McGEE OGLE, JUDGE