IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs March 22, 2005

## ROLAND BENNETT v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Hamilton County**
**No. 230168     Buddy D. Perry, Judge**

_____

**No. E2004-01416-CCA-R3-PC - Filed July 14, 2005**

_____

The petitioner, Roland Bennett, is currently serving a life sentence imposed in 1984. In 2001, the petitioner's counsel filed a petition for writ of error *coram nobis* on the basis of newly discovered evidence. After holding an evidentiary hearing on the matter, the *coram nobis* court dismissed the petition, and the petitioner now brings this appeal challenging that action. Upon review, we affirm the judgment of the lower court.

**Tenn. R. App. P. 3; Judgment of the Criminal Court is Affirmed.**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which DAVID G. HAYES and JERRY L. SMITH, JJ., joined.

A. Philip Lomonaco, Knoxville, Tennessee (at trial); and Roland Bennett, *Pro Se* (on appeal).

Paul G. Summers, Attorney General & Reporter; William G. Lamberth, II, Assistant Attorney General; and Dale Potter, District Attorney General *Pro Tem*, for the Appellee, State of Tennessee.

**OPINION**

The petitioner is currently serving an effective life sentence, which is comprised of two consecutive 30 year sentences for two aggravated rape convictions and a life sentence for armed robbery. The following facts formed the basis for the petitioner's convictions:

At trial, the jury accredited the testimony from the state's witnesses, which indicated that the victim had been sexually assaulted and robbed by the defendant during the early morning hours of July 15, 1984. The accredited testimony included that of David Allen Neal, a television station employee who lived in North Chattanooga. Neal stated that he was driving home from work shortly after midnight on July 15, 1984, when he saw a white female pedestrian grabbed from behind by a black male. Neal drove to an area where he could turn his car around, but by the time

he returned to the location where he had seen the other two individuals, they were no longer there.

The victim testified that she was walking home when she was accosted and grabbed by a black male whom she identified as the defendant. She stated that the defendant, whom she had never seen before, was carrying a glass liquor bottle when she first noticed him. He dropped and broke the bottle, however, when the victim stabbed him in the side with an ink pen that she was carrying. The defendant picked up a part of the broken bottle, held it to the victim's neck, and ordered, "Just do what I tell you to do and I won't kill you."

He then dragged the victim through a rock-and gravel-covered lot and up a steep hill to a wooded area. He repeatedly forced the now battered and bleeding woman to the ground and threatened her by placing the broken piece of glass against her throat. After forcing her to perform fellatio and submit to vaginal intercourse, the defendant put on the victim's slacks and left the scene.

A later police search of the area resulted in the recovery of the victim's purse, her pen, and her bloody clothes. The police also recovered a pair of cut-off blue jeans in which they found a set of keys and a gold chain that the victim had been wearing when the assault began.

The discovery of the keys led the police to a nearby residence where they found the defendant hiding in an upstairs closet. At that time, the defendant was still wearing the victim's slacks and a puncture wound was visible on his left side.

Despite the overwhelming evidence against him, the defendant maintained that he was innocent. He testified that the acts of intercourse were performed with the victim's consent and that the gold chain found in his blue jeans actually belonged to him.

*State v. Roland Bennett*, No. 927, slip op. at 1-2 (Tenn. Crim. App., Knoxville, Nov. 19, 1985).

In an effort to discover new evidence that would exonerate the petitioner, the petitioner's family hired a private investigator in 1999. The investigator interviewed the victim, who reported that she falsely identified the gold chain necklace discovered on the petitioner as hers at the petitioner's trial. She claimed that she lied because the assistant district attorney general prosecuting the case encouraged her to do so by insisting that a robbery conviction was necessary to ensure that the petitioner would receive a lengthy sentence.[1]

---

[1] After the investigator reported that the victim had recanted a portion of her trial testimony, petitioner's counsel filed a petition for post-conviction relief requesting a new trial on the basis of this new evidence. Petitioner's counsel subsequently withdrew the petition, stating that no evidence had been discovered that would toll the statute of limitations applicable to post-conviction petitions. The petitioner later secured new counsel, who filed a petition for a

(continued...)

After learning that the victim had recanted portions of her trial testimony, the petitioner filed a petition for writ of error *coram nobis*. The *coram nobis* court held an evidentiary hearing, at which time the victim and the former assistant district attorney general who prosecuted the petitioner's case testified.[2]

At the evidentiary hearing, the victim testified that the prosecutor encouraged her to identify the petitioner as her perpetrator and the gold necklace found on him as her necklace. The victim recounted that when the prosecutor discussed the case with her in his office, he stressed the importance of her ability to identify her perpetrator. According to the victim, the prosecutor indicated that the petitioner's file was on his desk and that it contained a photograph of the petitioner. He then left his office, apparently to allow her to review the file and familiarize herself with the petitioner's picture so she would be able to identify him at a later time. She testified that she was unable to identify her perpetrator because she did not see his face; therefore, her identification of the petitioner as her perpetrator at trial was false.

Regarding her false identification of the necklace found on the petitioner, the victim testified that the prosecutor advised her that if the petitioner was only convicted of rape and not of robbery, he would receive a relatively short sentence and would be released in a few years. However, if the petitioner was convicted of robbery, he would receive a much lengthier sentence; therefore, she must testify that the gold necklace found on the petitioner was her necklace to ensure that the petitioner would remain incarcerated for a lengthy period of time. Accordingly, she falsely identified the gold necklace found on the petitioner as hers when she testified at the petitioner's trial. She decided to recant her trial testimony because she believed that the petitioner had been convicted of armed robbery, for which he received a life sentence, on the basis of her false testimony.

On cross-examination, the state elicited from the victim that after investigating police officers recovered a gold chain from the petitioner, the victim identified the chain as hers. The victim could not recall if she made this identification during the period of the investigation before the prosecutor became involved.

The former assistant district attorney general who prosecuted the petitioner's case testified that he did not encourage the victim to perjure herself. Furthermore, he denied telling the victim that it was important that she identify the petitioner as her perpetrator. The prosecutor opined that the victim's identification of the petitioner was not necessary because other evidence established that he was the victim's rapist; the petitioner was wearing the victim's pants when he was discovered

---

[1](...continued)

writ of error *coram nobis*. Because the former assistant district attorney general who prosecuted the petitioner's case is now a circuit court judge, the petitioner moved to disqualify certain members of the district attorney's office from participation in the petitioner's case. Accordingly, the petitioner's case was assigned to a special judge and a district attorney general *pro tem*.

[2] The *coram nobis* court heard testimony on two different dates. The victim testified on September 4, 2002, and the former assistant district attorney general testified on October 6, 2003.

by the police, and he had sustained a wound to the side of his torso, which was consistent with the victim's report that she stabbed her attacker in the side of his torso with an ink pen.

After the hearing, the court issued an order denying the petition for writ of error *coram nobis*. The court found that it could not conclude that the victim's recanted testimony was false and her new testimony was true based upon "contradictions in her testimony and reasonable questions about her credibility." Specifically, the court noted that the evidence did not support the victim's assertion that the prosecutor encouraged her to lie when identifying the petitioner as her rapist because her identification of the petitioner was unnecessary to secure a conviction. Moreover, the court found that the evidence did not support the victim's assertion that the prosecutor encouraged her to falsely identify the gold necklace as hers because the victim told police that the necklace was hers before the prosecutor became involved in the case.

The petitioner now appeals the lower court's denial of his petition on the basis that the court abused its discretion when determining that the victim's testimony was incredible and would not have changed his verdict if heard by a jury. Specifically, the petitioner alleges that the victim testified that the prosecutor's assessment of the petitioner and his case motivated her to lie. The victim testified that the prosecutor warned her that the petitioner was a violent offender with a history of raping other women and that the petitioner had not been prosecuted for his prior rapes because his other victims refused to testify against him. Thus, the prosecutor warned the victim that if the petitioner received a relatively short sentence, when released he may rape other women and could seek out the victim and harm her and/or her family in retaliation for her testimony against him. The petitioner asserts that the victim's testimony was corroborated by the former prosecutor's testimony, wherein he characterized the victim as reluctant and fearful and explained that he encouraged the victim to testify at trial. The petitioner asserts that the victim's testimony is further corroborated by the prosecutor's trial notes, which reflect that the petitioner threatened the victim after raping her, stating that he would hurt her and her family if she contacted the police.

The state responds by asserting that the lower court properly dismissed the petition because the recanted testimony of the victim does not negate the defendant's guilt in light of the other ample evidence presented against him and because the court properly determined that the victim's inconsistent testimony was not credible.

The state also asserts that the instant petition is barred because it was filed outside the applicable statute of limitations. The state challenged the petition on this ground in the *coram nobis* court, as well, and the court denied the state's motion to dismiss the petition on the principle that "a court should resolve issues on the merits that strike at the heart of the judicial system." Specifically, the *coram nobis* court concluded that it had "a duty to address on the merits an allegation that a prosecutor prompted a witness to lie." *See* Tenn. Code Ann. § 27-2-103 (2000) (instructing that a petition for writ of error *coram nobis* must be filed within one year of the date of final judgment); *Workman v. State*, 41 S.W.3d 100, 104 (Tenn. 2001) (*coram nobis* one-year statute of limitations may be tolled if application of the statute would violate principles of due process);

*State v. Ratliff*, 71 S.W.3d 291 (Tenn. Crim. App. 2001) (holding same in noncapital case where the newly discovered evidence was in the form of victim recantation).

When determining whether due process considerations should toll the *coram nobis* statute of limitations, the courts of Tennessee have been instructed to weigh the government's and the defendant's interests.

> [D]ue process precludes application of the statute of limitations to bar consideration of a petition for writ of error [*coram nobis*] in cases where the defendant's interest in obtaining a hearing to present newly discovered evidence, which may establish actual innocence, far outweighs any governmental interest in preventing the litigation of stale claims.

*Ratliff*, 71 S.W.3d at 297 (citing *Workman*, 41 S.W.3d at 103). Although the *coram nobis* court did not explicitly engage in the analysis outlined above, the court appears to have determined that the government's usual interest in finality of judgments and abatement of stale claims was offset by its interest in maintaining the integrity of the judicial system. Thus, the governmental interest, as discerned by the court below favors the petitioner, and moreover, the petitioner's interest in obtaining a hearing to investigate his possible innocence of a crime is substantial when he is currently serving a life sentence. In this situation, we will not disturb the *coram nobis* court's determination that due process considerations should toll the applicable statute of limitations. *See Ratliff*, 71 S.W.3d at 297 (holding that due process considerations should toll the statute of limitations where the newly discovered evidence was a victim's recanted testimony in a child rape case where the defendant was serving 100% of a 24 year sentence).

A writ of error *coram nobis* is an extraordinary remedy by which a trial court may provide relief from a judgment under narrow and limited circumstances. *State v. Mixon*, 983 S.W.2d 661, 668 (Tenn. 1999). The remedy is available by statute to a criminal defendant in Tennessee. *See* Tenn. Code Ann. § 40-26-105 (2003). This statute provides, in pertinent part:

> Upon a showing by the defendant that the defendant was without fault in failing to present certain evidence at the proper time, a writ of error [*coram nobis*] will lie for subsequently or newly discovered evidence relating to matters which were litigated at the trial if the judge determines that such evidence may have resulted in a different judgment, had it been presented at the trial. The issue shall be tried by the court without the intervention of a jury, and if the decision be in favor of the petitioner, the judgment complained of shall be set aside and the defendant shall be granted a new trial in that cause.

*Id.*

Recanted testimony may qualify as newly discovered evidence. *Mixon*, 983 S.W.2d at 672. A new trial should be granted on the basis of newly discovered recanted testimony, however,

only if: (1) the trial court is reasonably well satisfied that the testimony given by the material witness was false and the new testimony is true; (2) the defendant was reasonably diligent in discovering the new evidence, or was surprised by the false testimony, or was unable to know of the falsity of the testimony until after the trial; and (3) the jury might have reached a different conclusion had the truth been told. *Id.* at 673 n.17. The court may grant a petition for writ of error *coram nobis* if it determines that if the newly discovered evidence had been introduced at trial, "there is a 'reasonable probability' that the result of the proceeding would have been different." *State v. Workman*, 111 S.W.3d 10,17-18 (Tenn. Crim. App. 2002). The decision to grant or deny the petition lies within the sound discretion of the trial court. *See* Tenn. Code Ann. § 40-26-105 (2003); *State v. Hart*, 911 S.W.2d 371, 375 (Tenn. Crim. App. 1995). Therefore, we will not overturn the decision of the trial court absent a showing of abuse of discretion.

We hold that the *coram nobis* court did not abuse its discretion when denying the petition. There is sufficient evidence in the record to support the court's determination that the victim's testimony at the evidentiary hearing was inconsistent and incredible, thereby supporting the court's inability to find that the victim's recanted testimony was false and her new testimony was true. As we have noted, the assessment of witness credibility is entrusted to the sound discretion of the trial court. *See State v. Odom*, 928 S.W.2d 18, 23 (Tenn. 1996). Furthermore, the victim gave inconsistent testimony at the evidentiary hearing. She testified that she recanted her testimony to exonerate the petitioner of a crime he did not commit and because she wanted to alleviate her guilty conscience. However, when questioned about why she did not come forward with this information earlier, she testified that she had forgotten about the incident until she was interviewed by the petitioner's investigator. She also testified that she identified the gold chain as her chain at trial because the prosecutor encouraged her to do so. However, she admitted that she identified the chain as hers when questioned by the police pre-trial. She further testified that she lied about her ownership of the necklace at trial in order to ensure that the petitioner would receive a lengthy sentence because the prosecutor advised her that the petitioner would receive only "a few years" for his rape convictions, but an armed robbery conviction would carry a lengthier sentence. However, when questioned on this issue, the victim admitted that she was aware that the petitioner was a multiple offender but could not recall being advised that the petitioner could receive a sixty-year sentence for his rape convictions. Considering this testimony, we hold that the lower court did not abuse its discretion when concluding that the first prong of the *Mixon* factors for determining the viability of a *coram nobis* petition had not been met. *See Mixon*, 983 S.W.2d at 673 n.17 (instructing that a new trial may only be granted on the basis of a *coram nobis* claim of newly discovered evidence if the trial court is reasonably well satisfied that the testimony given by the material witness was false and the new testimony is true).

Based on the foregoing analysis, the judgment of the lower court is affirmed.

_____
JAMES CURWOOD WITT, JR., JUDGE