IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs at Knoxville December 15, 2009

**PHYLLIS ANN McBRIDE v. STATE OF TENNESSEE**

**Appeal from the Circuit Court for Rutherford County**
**No. F23199     David Bragg, Judge**

————————————————

**No. M2009-01467-CCA-R3-PC - Filed May 27, 2010**

————————————————

The Petitioner, Phyllis Ann McBride, was convicted by a jury of the first degree murder of her husband and was sentenced to life in prison. She appealed her conviction, and this court affirmed. State v. Phyliss Ann McBride, No. 01C01-9606-CC-00269, Rutherford County (Tenn. Crim. App. Oct. 24, 1997). The Petitioner's subsequent petition for post-conviction relief was denied, and this court affirmed. Phyllis McBride v. State, No. M2000-00034-CCA-R3-CD, Rutherford County (Tenn. Crim. App. Mar. 22, 2001). The Petitioner now appeals pro se the Rutherford County Circuit Court's denial of her petition seeking a writ of error coram nobis, post-conviction relief, and "DNA Pathological and Toxicological Analysis." We affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

JOSEPH M. TIPTON, P.J., delivered the opinion of the Court, in which JAMES CURWOOD WITT, JR., and NORMA MCGEE OGLE, JJ., joined.

Phyllis Ann McBride, Nashville, Tennessee, Pro Se.

Robert E. Cooper, Jr., Attorney General and Reporter; Deshea Dulany Faughn, Assistant Attorney General; William C. Whitesell, Jr., District Attorney General, for the appellee, State of Tennessee.

**OPINION**

The facts underlying this appeal were detailed in this court's opinion affirming the Petitioner's convictions:

In November 1989, the victim, Bobby McBride, began experiencing vision disturbances, shortness of breath, hallucinations, dizziness, and sleeplessness. As a result of his deteriorating condition, Mr. McBride was taken to the emergency room where he was treated for "a urinary tract infection and a throat infection." On November 13, 1989, approximately one week later, Mr. McBride was examined by his family physician, Dr. Polk. Dr. Polk testified that, despite a history of high blood pressure, Mr. McBride's blood pressure was very low and he appeared very confused. Moreover, the victim was bloated and had "this gray, ashen look. . . . He was washed down in perspiration. . . . His face was discolored. His eyes looked . . . like they were ready to pop out. . . ." Because of his condition, Mr. McBride was admitted to the hospital for further observation and tests. During the day, Mr. McBride's condition continued to deteriorate despite numerous medications and medical procedures. Later that evening, Mr. McBride died, the cause of death being undetermined by the attending physicians. Due to the peculiar circumstances and unknown cause of Mr. McBride's death, the attending physicians and the county coroner requested, on several occasions, that an autopsy be performed. However, the appellant was opposed, stating that her husband would not have wanted an autopsy. Accordingly, no autopsy was performed and no further inquiry was made as to the victim's cause of death.

In July 1990, the appellant filed a complaint with the Sheriff's Department alleging that her father, Don Tiffin, Sr., had sexually abused her daughters. As a result of these allegations, deputies ordered Tiffin out of the appellant's house. A few days after these allegations were made, Tiffin volunteered to law enforcement officials that Bobby McBride's body should be exhumed, implicating the appellant in his death. In November 1990, an autopsy was performed on the victim's body. The autopsy report established the cause of death as "acute and chronic arsenic poisoning."

Testimony at trial connected the appellant to the murder of her husband. Don Tiffin, Sr. testified that, prior to the victim's death, the appellant had inquired as to the effects of rat

poison on a person. He further stated that the appellant received a life insurance check in the amount of [$]43,000, in addition to the victim's retirement benefits of $500.64 per month for the remainder of her life. Kim Bess, one of the appellant's daughters, testified that, prior to the victim's death, the appellant had asked her to put an electrical wire in the shower with the victim in order to kill him because she needed the money. Bess added that, on one occasion, she had observed the appellant "set [a can of drain opener] beside the refrigerator as she fixed [the victim] a glass of tea."

Carol Burgeson, an admitted informant for law enforcement agencies, testified that she was acquainted with the appellant through her management of a children's shop in Smyrna. She recalled that she was at the hospital on the day the victim was admitted and had spoken with the appellant concerning the victim's condition. The appellant related to her that the victim had "gotten a hold of some bad dope." Burgeson suggested that the police be notified[;] however, the appellant refused explaining that the police "would find out that he had been given too much cough medicine," over ten different types. The appellant further stated that "she did not want [the victim] to be all right, that she had given him too much . . . and that she wanted him to die; he was mean and bad, and he had to die." Based upon these facts, the appellant was convicted of first degree murder.

Phyliss Ann McBride, slip op. at 2-4 (footnote omitted).

The Petitioner filed a petition for post-conviction relief in which she contended that she was denied a fair and impartial jury because counsel was ineffective in failing to examine all the jurors during voir dire. The trial court denied post-conviction relief, and this court affirmed. Phyllis McBride, slip op. at 1.

Beginning in May 2003 and continuing until April 2005, the Board of Medical Examiners of the State of Tennessee (the Board) conducted an investigation into the medical practices of Dr. Charles Harlan, the examiner who conducted the autopsy on the victim in this case. In May 2005, the Board permanently revoked Dr. Harlan's medical license and imposed civil penalties. The Board found that Dr. Harlan's practices between 1995 and 2003 amounted to unprofessional conduct, dishonorable conduct, making false statements or

representations, fraud or deceit, malpractice, negligence, incompetence, violations of criminal statutes, and "a pattern of continued or repeated negligence and incompetence." Dr. Harlan was found to have misidentified victims, to have incorrectly determined the cause of death on numerous occasions–sometimes identifying a homicide as an accidental death and vice versa, and to have concealed that he contaminated samples.

After learning about Dr. Harlan's revoked medical license, the Petitioner filed a petition for writ of error coram nobis, for post-conviction relief, and for "DNA Pathological and Toxicological Analysis." She claimed that the Board's findings of fact and conclusions of law amounted to new evidence, that the prosecution failed to disclose a promise of immunity to Tiffin and a promise of compensation, immunity, or leniency to Burgeson, and that the Post-Conviction DNA Analysis Act of 2001 should be construed to allow forensic analysis of biological evidence in addition to DNA.

The trial court denied the Petitioner relief. It found that the petition for writ of error coram nobis and for post-conviction relief was untimely filed and that the petition for DNA pathological and toxicological analysis failed to conform with statutory requirements.

**I**

The Petitioner contends on appeal that the trial court improperly dismissed her petition for writ of error coram nobis. The State contends that the trial court properly dismissed the petition as time-barred.

A writ of error coram nobis lies "for subsequently or newly discovered evidence relating to matters which were litigated at the trial if the judge determines that such evidence may have resulted in a different judgment, had it been presented at the trial." T.C.A. § 40-26-105; State v. Hart, 911 S.W.2d 371, 374 (Tenn. Crim. App. 1995). The decision to grant or deny such a writ rests within the sound discretion of the trial court. Harris v. State, 301 S.W.3d 141, 144 (Tenn. 2010). A petition for writ of error coram nobis must be filed within one year of the date the judgment becomes final in the trial court. T.C.A. § 27-7-103; State v. Mixon, 983 S.W.2d 661, 663 (Tenn. 1999); State v. Ratliff, 71 S.W.3d 291, 295 (Tenn. Crim. App. 2001). The only exception to the statute of limitations is when due process requires tolling. Workman v. State, 41 S.W.3d 100, 103 (Tenn. 2001).

The Petitioner claims that the findings of fact and conclusions of law issued when Dr. Harlan's medical license was revoked were new evidence and that due process considerations require the tolling of the statute of limitations. The trial court determined that the credibility of the autopsy report could have been called into question at the trial and that, therefore, due process did not require tolling of the statute of limitations. The Petitioner's trial concluded

in 1994.  Dr. Harlan's medical license was revoked in 2005.  The Petitioner did not file the petition for writ of error coram nobis until August 2009.  Notwithstanding the Petitioner's failure to file a petition for the writ between 1994 and 2005, the Petitioner provides no reason for the nearly five year delay after the revocation of Dr. Harlan's license other than she did not learn of the action against Dr. Harlan until sometime in 2008 and it took her another year to draft the petition.

A petitioner is required to show that he or she was not at fault in failing to present the newly discovered evidence at the proper time.  T.C.A. § 40-26-105(b).  "If the defendant is 'without fault' in the sense that the exercise of reasonable diligence would not have led to a timely discovery of the new information, the trial judge must then consider both the evidence at trial and that offered at the coram nobis proceeding in order to determine whether the new evidence may have led to a different result."  State v. Vasques, 221 S.W.3d 514, 527-28 (Tenn. 2007).  In the present case, the Petitioner has alleged that she discovered the information about Dr. Harlan's license revocation in 2008, three years after the doctor's license was revoked.  She then waited "about a year" to file her petition.  Despite her allegation of when she actually discovered the information, the Petitioner has not alleged facts from which a court could conclude that despite an exercise of reasonable diligence, the information was not discoverable within the statutory period for bringing a timely coram nobis claim.  As a result, the trial court was not required to consider whether a reasonable basis existed that had the evidence been presented at the trial, the result of the proceeding might have been different.  See id.

The statute provides that the evidence must be "newly discovered evidence relating to matters which were litigated at the trial . . . ."  T.C.A. § 40-26-105(b).  The Board determined that the period of Dr. Harlan's medical malpractice occurred after he had conducted the autopsy and had testified in this case.  In addition, the Petitioner was given the opportunity to challenge Dr. Harlan's credibility and the validity of the autopsy report during cross-examination and failed to do so.  We do not believe that the revocation of Dr. Harlan's medical license and the Board's findings constitute "new evidence" as contemplated by the statute.  We hold that the trial court did not abuse its discretion when it denied the Petitioner a writ of error coram nobis because the petition was not timely filed.

**II**

The Petitioner contends that the trial court improperly dismissed her petition for post-conviction relief.  The State contends that the trial court did not err in summarily dismissing the petition for post-conviction relief because the Petitioner had previously filed a petition for post-conviction relief that had been resolved on its merits by a court of competent jurisdiction.

Post-conviction relief may only be given if a conviction or sentence is void or voidable because of a violation of a constitutional right. T.C.A. § 40-30-103 (2006). The Post-Conviction Procedure Act allows for the filing of only one petition, which must be filed within one year of the final action by the highest state appellate court to which an appeal is made and within one year of the trial court's judgment becoming final. Id. § 40-30-102(a), (c). In pertinent part, the statute allows exceptions to the statute of limitations when "[t]he claim in the petition is based upon new scientific evidence establishing that the petitioner is actually innocent of the offense or offenses for which the petitioner was convicted; . . . ." Id. § 40-30-102(b). In addition, principles of due process may allow tolling of the statute of limitations in limited circumstances. See Burford v. State, 845 S.W.2d 204, 208 (Tenn. 1992) ("due process requires that potential litigants be provided an opportunity for the presentation of claims at a meaningful time and in a meaningful manner").

The Petitioner previously filed a petition for post-conviction relief in which she alleged that she had received the ineffective assistance of counsel at the trial. The trial court denied relief, and this court affirmed. Phyllis McBride, slip op. at 1. The Petitioner acknowledges that the post-conviction statute of limitations has expired. However, she argues that due process concerns allow the tolling of the statute of limitations. The Petitioner claims that Don Tiffin's and Carol Burgeson's testimony should be reevaluated as violations of the protections announced in Brady v. Maryland, 373 U.S. 83, 87 (1963), in light of the new evidence of Dr. Harlan's misconduct. She claims that the "prosecution engaged in a pattern of misconduct that was designed to conceal the existence of incentives to both Tiffin and Burgeson" and that "she has been denied a reasonable opportunity to litigate these issues, and her interest in raising them outweighs the State's interest in the finality of judgments."

A petitioner may move to reopen a previously filed petition for post-conviction relief in limited circumstances, including the discovery of new evidence establishing that the petitioner is actually innocent of the offense . . . ." Id. § 40-30-102. The trial court also evaluated the Petitioner's petition as one to reopen, but it found that the Petitioner had not presented facts establishing by clear and convincing evidence that her sentence should be set aside or reduced. See T.C.A. § 40-30-117(a)(4). In her reply brief, the Petitioner stated that she did not intend the petition to be considered as a motion to reopen her previously filed petition for post-conviction relief.

This court addressed the issue of Burgeson's incentive to testify falsely against the Petitioner in the Petitioner's first appeal and held that it was without merit. Phyliss Ann McBride, slip op. at 9. Nothing prevented the Petitioner from raising the issue of Tiffin's bias at the trial. See T.R.A.P. 36(a). We fail to see how Dr. Harlan's malpractice altered the issue of Tiffin's and Burgeson's alleged bias such that the statute of limitations should be tolled. We hold that the trial court did not err when it dismissed the Petitioner's second

petition for post-conviction relief. Moreover, given the Petitioner's assertion that the petition at issue was not intended to reopen her first post-conviction petition, we conclude that we are without jurisdiction to consider a second post-conviction petition, given the statute's specific directive that a petitioner be allowed only one post-conviction petition. See id. § 40-30-102(c).

### III

The Petitioner contends that the trial court improperly dismissed her petition for DNA pathological and toxicological analysis. The State contends that the trial court properly denied the petition because the Post-Conviction DNA Analysis Act does not authorize the tests the Petitioner requested.

The Post-Conviction DNA Analysis Act of 2001 provides that a person convicted of certain enumerated crimes, including first degree murder,

> may at any time, file a petition requesting the forensic DNA analysis of any evidence that is in the possession or control of the prosecution, law enforcement, laboratory, or court, and that is related to the investigation or prosecution that resulted in the judgment of conviction and that may contain biological evidence.

T.C.A. § 40-30-303. DNA analysis is required if the trial court determines:

> (1) A reasonable probability exists that the petitioner would not have been prosecuted or convicted if exculpatory results had been obtained through DNA analysis;
>
> (2) The evidence is still in existence and in such a condition that DNA analysis may be conducted;
>
> (3) The evidence was never previously subjected to DNA analysis or was not subjected to the analysis that is now requested which could resolve an issue not resolved by previous analysis; and
>
> (4) The application for analysis is made for the purpose of demonstrating innocence and not to unreasonably delay the execution of sentence or administration of justice.

T.C.A. § 40-30-304; see T.C.A. § 40-30-305.

In denying relief, the trial court determined that the Petitioner had failed to provide facts to support a reasonable probability she would not have been prosecuted or convicted and that the verdict or sentence imposed would have been more favorable through DNA analysis. The court also found that the Petitioner had not shown that evidence was still in existence, that evidence was in a condition to allow DNA testing, or that evidence had not been previously subjected to DNA analysis.

The Petitioner argues that "forensic DNA pathology and toxicology analysis will achieve the purpose of determining whether Dr. Harlan correctly established the victim's cause of death as 'acute and chronic poisoning.'" She acknowledges that the statute does not specify that it permits the type of forensic and toxicological testing she desires. However, she urges us to construe Code section 40-30-304(3) to allow for such testing. That section states in pertinent part:

> [T]he court shall order DNA analysis if it finds that:
>
> (3) The evidence was never previously subjected to DNA analysis or was not subjected to the analysis that is now requested which could resolve an issue not resolved by previous analysis;
> . . . .

T.C.A. § 40-30-304(3) (emphasis added). The Petitioner argues that the conjunction "or" indicates the second of two alternatives. The State argues that the statute applies only to DNA testing and not to the type of forensic and toxicological testing the Petitioner requests. DNA analysis is the process through which DNA "in a human biological specimen is analyzed and compared with DNA from another biological specimen for identification purposes." T.C.A. § 40-30-302. The Petitioner's argument ignores the statute's directive that the court shall order DNA analysis only, not other forensic tests. We hold that the trial court did not err in denying relief.

In consideration of the foregoing and the record as a whole, we affirm the judgment of the trial court.

_____
JOSEPH M. TIPTON, PRESIDING JUDGE