FILED
05/08/2020
Clerk of the
Appellate Courts

IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs October 2, 2019

**TORRANCE JOHNSON v. STATE OF TENNESSEE**

**Appeal from the Criminal Court for Shelby County**
**No. 94-09400          James M. Lammey, Judge**

————————————————————

**No. W2018-02260-CCA-R3-ECN**

————————————————————

Petitioner, Torrance Johnson, appeals the summary dismissal of his petition for writ of error coram nobis in which he challenged his 1997 conviction for first-degree felony murder in the perpetration of a robbery. After a review of the record and applicable law, we affirm the judgment of the coram nobis court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

THOMAS T. WOODALL, J., delivered the opinion of the court, in which NORMA MCGEE OGLE and ROBERT W. WEDEMEYER, JJ., joined.

Torrance Johnson, Clifton, Tennessee, *Pro Se*.

Herbert H. Slatery III, Attorney General and Reporter; Zachary T. Hinkle, Assistant Attorney General; Amy P. Weirich, District Attorney General; and Leslie Byrd, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

*Background*

Petitioner was convicted in 1997 of first-degree felony murder in the perpetration of a robbery. He received a sentence of life without the possibility of parole. Petitioner's conviction and sentence were affirmed by this court on appeal, although the matter was remanded for correction of a clerical error in the trial court's minutes. *State v. Torrance R. Johnson*, No. 02C01-9704-CR-00150, 1999 WL 134921 (Tenn. Crim. App. Mar. 15, 1999). The facts of this case as set forth by this court on direct appeal are as follows:

On January 26, 1994, at approximately 9:30 p.m., Beverly J. Terrell was shot while engaged in a financial transaction at an automated teller machine (ATM) at a Boatmen's Bank branch in Memphis. At approximately the same time, 15-year-old Laqwanda Lee and her grandmother were turning into the Boatmen's Bank parking lot as a black male wearing a gray or white hooded sweatshirt and a black jacket ran across in front of them. The individual turned his face toward Ms. Lee for a brief period, and she noticed that he had some gold teeth. Upon pulling into the parking lot, Ms. Lee and her grandmother discovered the mortally wounded victim collapsed outside the ATM enclosure.

Julie Caradine, who worked at a Checkers restaurant across the street from Boatmen's Bank, saw an individual in a dark jacket and a light, white or gray hood-like sweater running from the bank about 9:30 p.m. She did not, however, see this person's face.

Following police investigation, the defendant emerged as the primary suspect. According to the testimony of Laqwanda Lee, she identified the defendant with 90 percent certainty in a photographic lineup and with absolute certainty in a physical lineup. Her testimony was corroborated by Detective John Cherry of the San Diego, California Sheriff's Department, who conducted the photographic lineup, Sergeant O.W. Stewart of the Memphis Police Department, who was present at the physical lineup, and Jerri Lee, the witness's grandmother and guardian who was present at the physical lineup.

Additionally, the defendant was implicated in a very similar robbery of Nedra Smith at the same ATM machine only six days before the victim's murder. According to Ms. Smith's testimony, she identified the defendant in a physical lineup as the man who robbed her. Investigator Alan Pinnow's testimony confirmed Smith's identification of the defendant in a physical lineup.

The state introduced photographs taken by the bank's surveillance equipment during the course of the Smith robbery and the victim's murder. In the photographs, the perpetrator of both crimes is wearing a light colored hooded sweatshirt which is pulled up over the perpetrator's head. The perpetrator is also wearing a dark, leather or leather-type jacket. Although the perpetrator is at an angle away from the camera, the lower part of his face is visible in one of the photographs.

The defendant was interviewed by law enforcement. At first, he claimed he had been working on the nights of the Terrell murder and the Smith robbery. This claim was rebutted by information received from the defendant's employer. The defendant also claimed he had been home and that he had been at a doctor's office being treated for pneumonia. The defendant's mother refused to talk to the authorities. The defendant gave no specific information about the alleged medical treatment so that law enforcement officials could confirm it; however, the defendant offered medical records at trial indicating that he had been treated for pneumonia at Regional Medical Center on January 28, 1994, two days after the victim's murder.

*Id.* at *1-2.

Thereafter, Petitioner sought post-conviction relief, which was denied by the post-conviction court on May 8, 2003. No direct appeal was taken. *Torr[a]nce Johnson v. Dotson*, No. W2006-01344-CCA-R3-HC, 2007 WL 1003116, at *1, (Tenn. Crim. App. April 3, 2007). In 2006, Petitioner sought habeas corpus relief claiming that he received ineffective assistance of both trial and appellate counsel, that his confession was coerced, and his conviction was based upon mistaken identity. The petition was denied by the habeas court. *Id.* This court affirmed the habeas court's denial pursuant to Rule 20 of the Rules of the Court of Criminal Appeals, noting that these claims did not entitle Petitioner to habeas corpus relief. *Id.* at *1-2.

On August 9, 2017, Petitioner filed a *pro se* petition for writ of error coram nobis alleging that he recently discovered supplemental police reports and correspondence that established a violation of *Brady v. Maryland*, 373 U.S. 83 (1963) and that he is actually innocent. Additionally, Petitioner sought due process tolling of the statute of limitations because he was unaware of a number of documents pertaining to his case until he received the State's file pursuant to a public records request. Petitioner also attached a number of documents, including copies of the supplemental police reports, Petitioner's arrest records, letters exchanged between investigators, and a letter that was sent to him in 2016 from the District Attorney General's Office.

The State filed a response, asserting that the materials pertaining to Petitioner's case were provided pretrial as found by this court on direct appeal. *State v. Torrance R. Johnson*, 1999 WL 134921, at *2 n. 3. More specifically, the State argued:

Because Petitioner was not without fault in failing to discover this evidence in a more timely manner and because such documents do not in fact comprise "new evidence" in the case, the State submits petitioner has failed to meet his burden under the statute and *Mixon*, et al. Therefore, the State respectfully requests petitioner's petition for writ of

error coram nobis be dismissed. In the alternative, the State asserts, even if the court were to find the documents are "newly discovered," because they do not contradict the trial testimony, the State submits petitioner's petition fails on the merits and should be denied.

The coram nobis court entered an order summarily denying Petitioner relief.

*Analysis*

Petitioner acknowledges on appeal that he did not file his petition for writ of error coram nobis within the statute of limitations. However, he argues that the coram nobis court erred by dismissing his petition without a hearing and that he is entitled to due process tolling of the statute of limitations for his petition for writ of error coram nobis based on evidence that was "newly discovered by [P]etitioner during review of the State's case file." More specifically, Petitioner alleges that the State withheld exculpatory evidence in violation of *Brady v. Maryland*, 373 U.S. 83 (1963).

A writ of error coram nobis is a very limited remedy which allows a petitioner the opportunity to present newly discovered evidence "which may have resulted in a different verdict if heard by the jury at trial." *Workman v. State*, 41 S.W.3d 100, 103 (Tenn. 2001); *see also State v. Mixon*, 983 S.W.2d 661 (Tenn. 1999). The remedy is limited "to matters that were not and could not be litigated on the trial of the case, on a motion for new trial, on appeal in the nature of a writ of error, on writ of error, or in a habeas proceeding." T.C.A. § 40-26-105. Examples of newly discovered evidence include a victim's recanted testimony or physical evidence which casts doubt on the guilt of the Petitioner. *Workman*, 41 S.W.3d at 101; *State v. Ratliff*, 71 S.W.3d 291 (Tenn. Crim. App. 2001); *State v. Hart*, 911 S.W.2d 371 (Tenn. Crim. App. 1995). The supreme court has stated the following concerning the standard to be applied when a trial court reviews a petition for writ of error coram nobis:

> [T]he trial judge must first consider the newly discovered evidence and be "reasonably well satisfied" with its veracity. If the defendant is "without fault" in the sense that the exercise of reasonable diligence would not have led to a timely discovery of the new information, the trial judge must then consider both the evidence at trial and that offered at the coram nobis proceeding in order to determine whether the new evidence may have led to a different result.

*State v. Vasques*, 221 S.W.3d 514, 527 (Tenn. 2007). Whether to grant or deny a petition for writ of error coram nobis rests within the sound discretion of the trial court. *Id.* at 527-28.

- 4 -

A petition for writ of error coram nobis must be dismissed as untimely filed unless filed within one (1) year of the date on which the petitioner's judgment of conviction became final in the trial court. *Mixon*, 983 S.W.2d at 670. The only exception to this is when due process requires a tolling of the statute of limitations. *Workman*, 41 S.W.3d at 103. A judgment becomes final, and the one-year coram nobis statute of limitations begins to run thirty days after entry of the judgment in the trial court if no post-trial motion is filed, or upon entry of an order disposing of a timely filed post-trial motion. T.C.A. § 27-7-103; *Mixon*, 983 S.W.2d at 670. The State is not required to raise the statute of limitations as an affirmative defense. *Nunley v. State*, 552 S.W.3d 800, 828 (Tenn. 2018). Whether a petitioner is entitled to due process tolling of the statute of limitations is a mixed question of law and fact, which we review de novo with no presumption of correctness. *Id*. at 830. In this case, the judgment was entered on January 11, 1997, and the motion for new trial was denied on February 25, 1997. Petitioner's petition for writ of error coram nobis was not filed until August 9, 2017, well past the expiration of the statute of limitations.

The coram nobis court found that Petitioner had not alleged any grounds that would toll the statute of limitations. The court concluded:

> This Court has reviewed the pleadings, the direct appeal opinion, and the clerk's file. For the reasons set forth below, the court finds the petition does not meet the requirements of *Tenn. Code Ann. § 40-26-105* (2006) and *State v. Mixon*, 983 S.W.2d 661 (Tenn. 1999) et. al. The court finds the evidence at issue is not "new evidence" of the type anticipated by the statute. Moreover, the court finds the petition[er] is not without fault in failing to present his claims in a timely manner. Therefore, petitioner's claims are procedurally barred. Finally, the court finds even if it were to find no procedural bar to petitioner's claims, the petitioner is not entitled to relief. The court finds petitioner has not established the admission of such evidence or the use of such evidence to exclude other evidence, when considered in light of all the proof presented at trial may have led to a different result.

The error coram nobis court properly dismissed petitioner's petition for writ of error coram nobis without appointing counsel or conducting a hearing. In his brief on appeal, Petitioner argues that he is entitled to error coram nobis relief because:

> The prosecution refused to supply [Petitioner] with [a]ny of the attached T.R. Vol. 1, page(s) 26 thru 41, Exhibits, withheld the Exculpatory Evidence: The withheld Brady material complained of goes to the heart of the State's theory of the case: had this exculpatory evidence been provided to petitioner the jury verdict would have been different, up to and including a lesser included offense: especially since it can be easily

- 5 -

proven that this Appellant was incarcerated at or during the time of the convicted offense.

However, in *Nunley*, the supreme court held that "an error coram nobis proceeding is not the appropriate procedural vehicle for obtaining relief on the ground that the defendant suffered a constitutional due process violation under *Brady*. The appropriate procedural mechanism to seek relief for a *Brady* violation is a post-conviction proceeding." *Nunley*, 552 S.W.3d at 819.

Furthermore, Petitioner has not established that he is entitled to due process tolling of the statute of limitations. The evidence presented by Petitioner is not newly discovered. The supplemental police reports, letters between police officials concerning the photographic lineup, the indictments, judgments, and two arrest records existed at the time of trial and were available to defense counsel. On direct appeal, this court noted that after the lead investigator testified at trial, "the state claimed and the defendant acknowledged that all [the witness's statements] had been tendered in advance." *Torrance R. Johnson*, 1999 WL 134921, at *2 n. 3. The trial court further permitted defense counsel time to review the "previously tendered materials," and "[t]he defense did not ask the court to revisit its reservation of ruling on the motion to require disclosure of the police report." *Id*. As a general rule, the claim at issue must not have existed during the limitations period to trigger due process consideration. *Seals v. State*, 23 S.W.3d 272, 278 (Tenn. 2000). Ignorance as to the existence of a claim does not create a "later-arising" claim for due process purposes. *See Brown v. State*, 928 S.W.2d 453, 456 (Tenn. Crim. App. 1996); *Passarella v. State*, 891 S.W.2d 619, 635 (Tenn. Crim. App. 1994). Therefore, Petitioner is not entitled to relief on this issue.

Petitioner also asserts that the coram nobis court was biased against him based on a newspaper article headlined "Commission to call for censure of judge over racist posts," concerning posts made by the judge on his personal Facebook page. The **only** document in support of Petitioner's argument is a copy of the newspaper attached to his brief. We are precluded from considering this document. This court has repeatedly held that documents attached to an appellate brief but not included in the record on appeal cannot be considered by this court as part of the record on appeal. *See State v. Matthews*, 805 S.W.2d 776, 783-84 (Tenn. Crim. App. 1990).

Furthermore, the entirety of Petitioner's argument of this issue in his appellate brief is one sentence: "Included and attached with this Appellant's brief is a Commercial Appeal newspaper article showing the bias of the trial court in deciding important cases with restricted [sic] citizens liberty [sic]." Under Rule 10(b) of the Rules of the Court of Criminal Appeals, issues which are not supported by argument or citation to authorities will be treated as waived. Petitioner's argument does not contain sufficient facts relevant to the issue raised by Petitioner. The argument does not contain the reasons why

Petitioner's contention requires appellate relief. Finally, Petitioner's argument does not contain any citation to authorities. This issue is waived.

## CONCLUSION

The judgment of the error coram nobis court is affirmed.

_____
THOMAS T. WOODALL, JUDGE