IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs March 13, 2024

## MACK MANDRELL LOYDE v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Davidson County**
**No. 2013-A-430     Jennifer Smith, Judge**

_____

### No. M2023-00858-CCA-R3-ECN

_____

In 2016, the Petitioner, Mack Mandrell Loyde, was convicted of aggravated burglary, aggravated robbery, and employing a firearm during the commission of a dangerous felony, for which he received an effective sentence of life without parole. In 2018, this court affirmed his convictions and remanded for resentencing. State v. Loyde, No. M2017-01002-CCA-R3-CD, 2018 WL 1907336, at *1-3 (Tenn. Crim. App. Apr. 23, 2018), perm. app. denied (Tenn. Aug. 8, 2018). In 2019, the Petitioner filed a petition seeking post-conviction relief based on ineffective assistance of counsel, the denial of which was affirmed on appeal. Loyde v. State, No. M2022-01132-CCA-R3-PC, 2023 WL 5447386, at *3 (Tenn. Crim. App. Aug. 24, 2023). In 2023, five years after his convictions and sentence became final, the Petitioner, acting pro se, filed the instant petition for writ of error coram nobis, which was summarily dismissed as beyond the one-year statute of limitations. In this appeal, the Petitioner contends he is entitled to equitable tolling of the limitations period based on an affidavit from an individual, Brandy Oldaker, who claimed to have been involved in the underlying offenses and who denied the Petitioner was involved. The Petitioner claims the affidavit is newly discovered evidence of his innocence.[1] Upon review, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

---

[1] We are compelled to note that the Petitioner has included two other issues in the argument section of his brief which are not designated as issues presented. The issues are (1) "whether the criminal history of Norris qualifies as newly discovered evidence;" and (2) "whether the trial counsel Caldwell's affidavit qualifies as newly discovered evidence," both of which appear to have been rejected by the coram nobis court as previously determined in the Petitioner's post-conviction matter. Rule 27(a)(4) of the Tennessee Rules of Appellate Procedure requires that a petitioner's brief include a statement of the issues presented for review. "[A]n issue may be deemed waived when it is argued in the brief but is not designated as an issue in accordance with [Rule 27(a)(4)]." Hodge v. Craig, 382 S.W.3d 325 (Tenn. 2012). Accordingly, we decline to address those issues as they are waived.

CAMILLE R. MCMULLEN, P.J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and TIMOTHY L. EASTER, JJ., joined.

Mack Mandrell Loyde, Wartburg, Tennessee, Pro Se.

Jonathan Skrmetti, Attorney General and Reporter; Benjamin A. Ball, Senior Assistant Attorney General; Glenn Funk, District Attorney General; and Vincent P. Wyatt, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

At the Petitioner's February 22, 2016 trial, William Covington, the victim, testified that on the night of September 22, 2012, he was "drinking some beer" with Brandy Oldaker at his apartment. Loyde, 2018 WL 1907336, at *1 (Tenn. Crim. App. Apr. 23, 2018). After Oldaker and the victim "fooled around for a little bit," he lost consciousness. When he woke, he was "tied or bound . . . face down in [his] own couch" and Oldaker was gone. When the victim tried to rise from the couch, a knee was "put into [his] back and a gun put to the back of [his] head." He was told by the assailant not to move or "[he] would blow [the victim's] head off." The victim did not see the gun at the back of his head, but believed due to his military training, that it was a revolver. The victim heard two or three other males discussing "hit[ting] the back of the house." Id. The men left the apartment, and the victim called 911. It was discovered that a 12-gauge shotgun, an AK-47, and a .22 long rifle belonging to the victim were missing. The victim also testified that two computers, "some tablets[,]" his wallet containing his debit and credit cards, and military ID were also missing. Id. On cross-examination, the victim explained that Oldaker knew the Petitioner, and the victim speculated that Oldaker may have put something in his drink to perpetrate the crime shortly before he passed out. The victim said he relayed his suspicions to the police.

Amber Norris, the Petitioner's ex-girlfriend, testified that she locked the Petitioner out of her apartment on the night of the offenses after he left to "go to Wal-Mart" and did not return before midnight. The next morning, Norris "stepped on the barrel of some sort of weapon" as she got out of bed. She then went to the bathroom, and the Petitioner entered her apartment around 5:30 a.m. as she was getting ready for work. Id. at *2. Norris testified that the Petitioner was carrying a duffel bag, a shotgun, and a "toboggan with the eye holes in it." She observed a handgun inside of the Petitioner's duffel bag. She also saw a check with the name "William Covington" on it on her coffee table. Id. She left her apartment and called the police. When the police arrived, Norris let them into her apartment.

The Petitioner was arrested and read his Miranda rights by Agent William Stewart. Agent Stewart testified that, "Immediately after Miranda [the Petitioner] was like, 'I know

I'm being arrested, I was just the lookout, I was just the lookout.'" Id. The Petitioner then told Agent Stewart he drove "Kevin and Bryan" to the robbery but only served as lookout and did not enter the apartment. He explained that the bankcards, military ID, and tablet were his payment for his part in the offense. These statements were not recorded. From Norris' apartment, the police collected the victim's shotgun, military ID, and tablet. The backpack and ski mask were connected to the robbery, and another handgun was collected from beneath the bed. The Petitioner offered no evidence at the close of the State's proof, and the Davidson County jury convicted him as charged. Id. at *3.

The Petitioner's convictions were affirmed by this court on direct appeal, however, we remanded for resentencing. Id. at *3, *8. The record includes amended judgments, which were entered on October 10, 2018.

The Petitioner filed a pro se petition for post-conviction relief on February 1, 2019, arguing that he received ineffective assistance of counsel. Loyde, 2023 WL 5447386, at *3. At the evidentiary hearing on November 19, 2021, the Petitioner argued, among other things, that trial counsel failed to adequately investigate his case. As relevant here, trial counsel testified that he did not call Oldaker as a witness despite the Petitioner's belief that she was an accomplice in the robbery because trial counsel was worried that she would implicate the Petitioner if she testified. This court affirmed the post-conviction court's denial of post-conviction relief. Id. at*7.

On January 9, 2023, the Petitioner filed a pro se petition for writ of error coram nobis based primarily on a handwritten affidavit by Brandy Oldaker, which was attached. The Petitioner believed the affidavit was newly discovered evidence that established his innocence. The affidavit provided:

> On September 22, 2012, myself and two other individuals whom go by the names of Rodney and Fred-Fred was [sic] involved in a [sic] aggravated robbery and burglary. The victim was my ex-boyfriend William Covington. Numerous items was [sic] taken. Myself, Brandy Oldaker[,] and the two others involve Rodney and Fred-Fred sold the items to [the Petitioner]. [The Petitioner] had no knowledge of the merchandise being stolen nor did he [] participate in the aggravated robbery and burglary. All though [sic] [the Petitioner] purchased the items he committed no crimes. I [] was manipulated and placed under duress (threats) of being confine[d] if I did not name [the Petitioner] as a defendant. I was coerced by the police and detectives. I [] lied to help send [the Petitioner] an innocent man to prison. I [] am voluntarily making this oath. I [] have not been threatened or promise[d] any financial compensation. I [] being older realize I have a moral obligation to clear my conscience and tell the truth. I [] have done a

grave injustice to [the Petitioner]. I [] pray that me coming forward will assist this innocent man [the Petitioner] in regaining his freedom.

The affidavit was signed and notarized on December 9, 2022. The Petitioner believed the affidavit was proof that Oldaker had lied to the police and was involved in the offenses. Because the Petitioner did not receive Oldaker's affidavit until December 17, 2022, the Petitioner believed the statute of limitations began to run from the date he received Oldaker's affidavit.

The State filed its response on February 14, 2023, and argued the petition was untimely. In response, the Petitioner filed a motion to reconsider the petition for writ of error coram nobis and argued that equitable tolling of the statute of limitations was proper because "common sense[] show[ed]" that Oldaker's presence at his trial would have proven his innocence and brought Oldaker and "the other two actual robbers" to justice. The Petitioner further alleged that the affidavit proved that a conspiracy existed to make him a scapegoat for the offense. The Petitioner also claimed that he had asked his trial counsel to subpoena Oldaker, which trial counsel did not do.

By written order on May 9, 2023, the coram nobis court denied the petition because it was untimely and the Petitioner had failed to demonstrate that equitable tolling of the statute of limitations was appropriate. In rejecting the Petitioner's claim that Oldaker's affidavit was newly discovered evidence, the court reasoned that "Oldaker was known to the Petitioner at the time of trial, but she was not called to testify at trial or at his post-conviction hearing." The court stated that "discovery of or ignorance to the existence of a claim does not create a 'later-arising' claim[,]" and concluded that the Petitioner had failed to demonstrate that his claim was "later-arising." The Petitioner filed a timely notice of appeal, and this case is properly before this court for review.

## ANALYSIS

The Petitioner argues that Oldaker's affidavit is newly discovered evidence which entitles him to error coram nobis relief. The State responds that the Petitioner is not entitled to equitable tolling of the statute of limitations. We agree with the State.

A writ of error coram nobis is available to convicted defendants. Tenn. Code Ann. § 40-26-105(a). However, a writ of error coram nobis is an "extraordinary procedural remedy" that "fills only a slight gap into which few cases fall." State v. Mixon, 983 S.W.2d 661, 672 (Tenn. 1999) (citing Penn v. State, 670 S.W.2d 426, 428 (Ark. 1984)). "The purpose of this remedy 'is to bring to the attention of the [trial] court some fact unknown to the court, which if known would have resulted in a different judgment.'" State v. Hart, 911 S.W.2d 371, 374 (Tenn. Crim. App. 1995) (quoting State ex rel. Carlson v. State, 407

- 4 -

S.W.2d 165, 167 (Tenn. 1966)). Relief by petition for writ of error coram nobis is provided for in Tennessee Code Annotated section 40-26-105. The statute provides, in pertinent part:

> (b) The relief obtainable by this proceeding shall be confined to errors dehors the record and to matters that were not or could not have been litigated on the trial of the case, on a motion for new trial, on appeal in the nature of a writ of error, on writ of error, or in a habeas corpus proceeding. Upon a showing by the defendant that the defendant was without fault in failing to present certain evidence at the proper time, a writ of error coram nobis will lie for subsequently or newly discovered evidence relating to matters which were litigated at the trial if the judge determines that such evidence may have resulted in a different judgment, had it been presented at the trial.

> (c) The issue shall be tried by the court without the intervention of a jury, and if the decision be in favor of the petitioner, the judgment complained of shall be set aside and the defendant shall be granted a new trial in that cause. . . .

Tenn. Code Ann. § 40-26-105(b), (c).

The decision to deny a petition for writ of error coram nobis on the grounds of subsequently or newly discovered evidence rests within the sound discretion of trial court, which this court will not disturb absent an abuse of discretion. Tenn. Code Ann. § 40-26-105. In order to qualify as "newly discovered evidence" for the purposes of a writ of error coram nobis, the proffered evidence must be (1) evidence of facts existing, but not yet ascertained, at the time of the original trial, (2) admissible, and (3) credible. Nunley v. State, 552 S.W.3d 800 (Tenn. 2018). A motion seeking a new trial based on newly discovered evidence "must also be supported by affidavits." Harris v. State, 301 S.W.3d 141, 152 (Tenn. 2010) (Koch and Clark, JJ., concurring). These affidavits "should be filed in support of the petition or at some point in time prior to the hearing." Hart, 911 S.W.2d at 375. The affidavits must be relevant, material, germane to the grounds raised in the petition, and based on personal knowledge. Id. "Affidavits which fail to meet these criteria will not justify the granting of an evidentiary hearing since the information contained in the affidavits, taken as true, would not entitle the petitioner to relief." Id.

A petition for a writ of error coram nobis based on newly discovered evidence need only show that the newly discovered evidence, had it been admitted at trial, may have resulted in a different judgment, and does not need to show that the result of the proceeding would have been different had the evidence been available at trial. A criminal trial "may have resulted in different judgment," so as to warrant coram nobis relief based on newly discovered recantation testimony, if the trial court is reasonably well satisfied that trial

- 5 -

testimony was false, that recanted testimony was truthful, and that a jury might have reached a different conclusion had truth been told. State v. Workman, 111 S.W.3d 10 (Tenn. 2002); Johnson v. State, 370 S.W.3d 694, 700 (Tenn. Crim. App. 2011) (citing State v. Ratliff, 71 S.W.3d 291, 298 (Tenn. Crim. App. 2001)). The assessment of witness credibility is entrusted to the sound discretion of the trial court. Id. (citing Hart, 911 S.W.2d at 375; Bennett v. State, No. E2004-01416-CCA-R3-PC, 2005 WL 1661721 (Tenn. Crim. App. July 14, 2005) (holding that the trial court did not abuse its discretion in denying error coram nobis relief after determining that a witness who recanted previous testimony was not credible), perm. app. denied (Tenn. Dec. 5, 2005)).

A petition for a writ of error coram nobis must be filed within one year after the challenged judgment becomes final. Tenn. Code Ann. § 27-7-103. The petition is subject to being summarily dismissed if it does not show on its face that it has complied with the one-year statute of limitations, and such compliance is an essential element of a coram nobis claim. Nunley, 552 S.W.3d at 828. To accommodate due process concerns, the one-year statute of limitations may be tolled if a petition for a writ of error coram nobis seeks relief based upon new evidence of actual innocence discovered after expiration of the limitations period. Id. 828-829. If the coram nobis petition does not show on its face that it has been filed within the one-year statute of limitations, the petition must set forth with particularity facts demonstrating that the prisoner is entitled to equitable tolling of the statute of limitations:

> To be entitled to equitable tolling, a prisoner must demonstrate with particularity in the petition: (1) that the ground or grounds upon which the prisoner is seeking relief are "later arising" grounds, that is grounds that arose after the point in time when the applicable statute of limitations normally would have started to run; [and] (2) that, based on the facts of the case, the strict application of the statute of limitations would effectively deny the prisoner a reasonable opportunity to present his or her claims. . . . A prisoner is not entitled to equitable tolling to pursue a patently non-meritorious ground for relief.

Id. at 829.

"Whether due process considerations require tolling of a statute of limitations is a mixed question of law and fact, which we review de novo with no presumption of correctness." Id. at 830. Upon review of a petition for a writ of error coram nobis for timeliness, an appellate court must first determine whether the petitioner "asserted the claim in a timely manner and, if not, whether he has demonstrated that he is entitled to equitable tolling of the statute of limitations as provided in [Tennessee Code Annotated

Section 27-7-103]. The inquiry ends if his petition is not timely and if he has failed to demonstrate that he is entitled to relief from the statute of limitations." Id.

The record shows that the amended judgments in this case were entered on October 10, 2018. A petition for writ of error coram nobis must be filed within one year of the judgment becoming final, and in this case that deadline was October 10, 2019. The Petitioner filed his petition for writ of error coram nobis on January 9, 2023, over three years after the limitations period had expired. Accordingly, the petition is time-barred unless the Petitioner demonstrates he is entitled to equitable tolling of the statute of limitations. To establish equitable tolling, the Petitioner argues the December 2022 Oldaker affidavit is "later arising" grounds for relief because it was "the only and first time Oldaker started to tell the truth." The Petitioner likens his case to Holliman v. State, No. W2011-01071-CCA-R3-CO, 2012 WL 3793143, at *1 (Tenn. Crim. App. Aug. 31, 2012), and argues that Oldaker's "change of heart" should be considered the same as the recanted statement of the co-defendant in Holliman. The State responds that information contained in the Oldaker affidavit would not have changed the outcome of the trial because it is contrary to the Petitioner's admissions to the police to driving the two other perpetrators to the offense location, being the "look out" for them, and receiving "the shotgun, bankcards, military ID, and tablet as payment for his involvement in the crimes." We agree with the State.

In State v. Holliman, No. W2003-01736-CCA-R3-CD, 2005 WL 819735, at *1 (Tenn. Crim. App. Apr. 8, 2005), the defendant was convicted by a jury of first-degree murder and conspiracy to commit the first-degree murder of her husband. She received an effective sentence of life without parole. The proof at trial established that Holliman paid her first cousin, James Rodney Mills, and another individual to commit the murder. However, Mills did not testify at trial. The defendant testified and admitted that she discussed murdering the victim with Mills. However, the defendant claimed that there was no agreement for the killing and that she only participated to the extent that she did because Mills had threatened to kill her and her family. The defendant claimed that she was afraid of Mills. On August 24, 2009, a reporter from a Memphis television channel interviewed Mills. During the interview, Mills recanted statements he made at his guilty plea hearing implicating the defendant in the first-degree murder and conspiracy to commit first degree murder. He stated that he exaggerated the defendant's involvement to avoid the death penalty. Holliman, 2012 WL 3793143, at *1.

Holliman subsequently filed a petition for writ of error coram nobis and raised for the first time a claim of newly discovered evidence based on the recantation of her co-defendant James Rodney Mills. Id. at *3. This court reversed the summary dismissal of the untimely petition because the petitioner offered newly discovered evidence that her co-defendant recanted incriminating testimony made during his guilty plea hearing. Id. In

doing so, the panel in <u>Holliman</u> acknowledged that "whether the testimony qualifies as impeachment evidence *may* be relevant in the determination but is not controlling[.]" <u>Id.</u> (citing <u>State v. Vasques</u>, 221 S.W.3d 514, 527-28 (Tenn. 2007)) (emphasis added). <u>Holliman</u> does not afford the Petitioner any relief as it simply stands for the proposition that there is not a complete bar to coram nobis relief in cases involving alleged newly discovered impeachment evidence. <u>Compare</u> <u>Bowen v. State</u>, No. W2022-00229-CCA-R3-ECN, 2022 WL 17408878, at *5 (Tenn. Crim. App. Dec. 5, 2022), <u>perm. app. denied</u> (Mar. 8, 2023) (stating that the co-defendant's testimony of the petitioner's innocence was not newly discovered solely because the co-defendant was now willing to testify); <u>Skinner v. State</u>, No. W2017-01797-CCA-R3-ECN, 2018 WL 3430339, at *2 (Tenn. Crim. App. July 16, 2018), <u>perm. app. denied</u> (Tenn. Nov. 16, 2018) (concluding the "newly discovered evidence" was not later arising when trial counsel had access to and reviewed the evidence prior to trial).

We conclude that summary dismissal was proper because the Petitioner failed to establish that the information provided by Oldaker was "later arising," and he is not entitled to equitable tolling to pursue a patently non-meritorious ground for relief. First, as noted by the coram nobis court, Oldaker was known to the Petitioner at the time of trial and at his post-conviction hearing. Trial counsel testified at the post-conviction hearing that he did not call Oldaker as a witness despite the Petitioner's belief that she was an accomplice in the robbery because trial counsel was worried that she would implicate the Petitioner if she testified, which was determined by this court to be a sound tactical decision made after adequate preparation for the case. <u>Loyde</u>, 2023 WL 5447386, at *6. More importantly, in contrast to Oldaker's affidavit, the facts from the Petitioner's trial demonstrate:

> "Immediately after <u>Miranda</u> [the Petitioner] was like, I know I'm being arrested, I was just the lookout, I was just the lookout." The [Petitioner] continued, stating he drove "Kevin and Bryan" in a Honda Accord to the scene of the robbery, but he did not go inside the apartment. Rather, the [Petitioner] maintained he served as a lookout for the two who committed the robbery. The [Petitioner] told Agent Stewart he received the shotgun, bankcards, military ID, and tablet as payment for his involvement in the crimes.

> * * * *

> Officer Foster testified, "[a]fter his <u>Miranda</u> [r]ights had been read the [Petitioner] made an excited utterance that he knows he's going to jail for agg[ravated] robbery." At the time, Officer Foster was "under the impression that [the Petitioner] might have been involved with a burglary and that's the reason why we were out there, items that he probably took in a burglary were

- 8 -

in [Ms. Norris's] apartment." Officer Foster heard [the Petitioner] again state he "was going to jail for agg[ravated] robbery," and he also "overheard [the Petitioner] tell [Agent Stewart] he was only the lookout for the robbery."

Loyde, 2018 WL 1907336, at *2.

Even if we considered Oldaker's affidavit as later arising grounds for tolling purposes, "[a]s a general rule, subsequently or newly discovered evidence which . . . serves no other purpose than to contradict or impeach the evidence adduced during the course of the trial . . . will not justify the granting of a petition for the writ of error coram nobis when the evidence, if introduced, would not have resulted in a different judgment." Hart, 911 S.W.2d at 375 (internal citations omitted). Based on the above facts, the Petitioner twice admitted his involvement in this case to police, and it is unlikely that Oldaker's information may have resulted in a different judgment at trial. Accordingly, strict application of the statute of limitations period by the coram nobis court did not effectively deny the Petitioner a reasonable opportunity to present his claim and summary dismissal was proper.

## CONCLUSION

Based upon the above reasoning and authority, we affirm the coram nobis court's dismissal of the petition.

_____
CAMILLE R. MCMULLEN, PRESIDING JUDGE